# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**ANTHONY McNABB,**                                      **CIVIL ACTION**
    **Plaintiff**

**VERSUS**                                                          **No. 12-1342**

**BERTUCCI CONTRACTING CO.,**                     **SECTION "E"**
    **Defendant**

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant, Bertucci Contracting Company, LLC ("Bertucci"). Bertucci's motion seeks judgment as a matter of law that the *McCorpen*[1] defense bars Plaintiff's claim for maintenance and cure for his lower back injury.[2] Plaintiff, Anthony McNabb ("Plaintiff"), opposes the motion.[3] For the following reasons, the motion is **GRANTED**.

### Background

Plaintiff, a Jones Act Seaman,[4] alleges he was injured aboard the *A/B 8*, a spud barge operating on the navigable waters of the United States, on either April 2 or April 3, 2012.[5] According to Plaintiff, he sustained injuries during an unwitnessed and unreported accident

---

[1] *See McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548-50 (5th Cir. 1968).

[2] R. Doc. 24. Bertucci has also filed a reply memorandum. *See* R. Doc. 62.

[3] R. Doc. 36.

[4] The parties do not dispute that Plaintiff is a seaman within the meaning of the Jones Act, 46 U.S.C. § 30401. *See* R. Doc. 29 at p. 15.

[5] Although Plaintiff's complaint alleges he was injured on the evening of April 3, 2012 (R. Doc. 1 at p. 2), Plaintiff has clarified in his recitation of the facts in the parties' proposed pretrial order that the accident occurred on either April 2 or April 3, 2012. *See* R. Doc. 29 at p. 4. For the purposes of this order, the actual date that the accident allegedly occurred is immaterial to the Court's decision.

when he slipped and fell while checking the barge's winch brake locks.[6]  Plaintiff's alleged accident occurred approximately two weeks after his hiring.

At the time of the accident, Bertucci was Plaintiff's employer and the owner of the vessel.[7]  On May 23, 2012, Plaintiff filed his complaint in the above-captioned matter asserting that, as a result of the April 2012 accident, Bertucci is liable to him for failure to pay maintenance and cure benefits, negligence under the Jones Act, and the vessel's unseaworthiness.[8]

Specifically with respect to his claim for maintenance and cure, Plaintiff alleges that Bertucci has "refused and/or failed" to pay Plaintiff's maintenance and cure benefits, and such refusal or failure was "willful, wanton, arbitrary capricious, and/or otherwise without cause."[9]  Plaintiff further alleges he has had to endure additional and unnecessary pain, suffering, possible worsening of his physical condition, and financial stress.[10]  Thus, Plaintiff submits that Bertucci is liable to him for additional compensatory damages, together with interest, attorney's fees, and costs, and punitive damages pursuant to *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (U.S. 2009).

Bertucci has moved for summary judgment that Plaintiff is not entitled to maintenance and cure benefits for his lower back injury under *McCorpen* because, according to Bertucci, Plaintiff intentionally concealed a prior lower back injury during his

---

[6] R. Doc. 29 at p. 10.

[7] R. Doc. 29 at pp. 14-15.

[8] R. Doc. 1.

[9] R. Doc. 1 at p. 3.

[10] R. Doc. 1 at p. 3.

2

Bertucci pre-employment medical examination.[11]

### *Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the non-movant's case.  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

If the moving party meets its initial burden, the non-movant must go beyond the

---

[11] The relief Bertucci requests in its motion, and the concomitant scope of the Court's order denying Plaintiff maintenance and cure benefits, is discussed *infra* at pp. 19-21.

pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.' " *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled on other grounds*, *Grand Isle Shipyards, Inc., v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075

4

(citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *Sanchez v. Dallas/Fort Worth Int'l Airport Bd.*, 438 Fed. App'x 343, 346-47 (5th Cir. 2011) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 & n.49 (5th Cir. 2005)); see also *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996).

Finally, although the Court may consider all materials in the record when deciding a summary judgment motion, "the court need consider only materials cited by the parties." Fed. R. Civ. P. 56(c)(3). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotation marks omitted).

### Law and Analysis

Maintenance and cure are centuries-old remedies under general maritime law that seek to ensure the recovery of seaman injured in the service of a vessel. *Gaspard v. Taylor*

5

*Diving & Salvage Co., Inc.*, 649 F.2d 372, 375 n.3 (5th Cir. 1981).  Such remedies "are due without regard to the negligence of the employer or the unseaworthiness of the ship." *Gaspard*, 649 F.2d at 375 n.3.  "Maintenance is a per diem living allowance, paid so long as the seaman is outside the hospital and has not reached the point of 'maximum cure,' " whereas cure refers to the payment of "therapeutic, medical, and hospital expenses not otherwise furnished to the seaman" until he reaches maximum cure.  *Gaspard*, 649 F.2d at 375 n.3.  A seaman reaches "maximum cure" when "it appears probable that further treatment will result in no betterment of the seaman's condition."  *Gaspard*, 649 F.2d at 375 n.3. Thus, if a seaman's condition is incurable, insofar as future treatment "will merely relieve pain and suffering but not otherwise improve the seaman's physical condition," then the seaman has reached maximum cure.  *Gaspard*, 649 F.2d at 375 n.3.

An employer's duty to provide maintenance and cure to a seaman injured in the service of a vessel is "practically absolute."  *Johnson v. Cenac Towing, Inc.*, 599 F.Supp.2d 721, 726 (E.D. La. 2009) (Vance, J.).  Indeed, this duty is so broad that it "has at times been compared to mandatory employer-provided health and accident insurance."  *Johnson*, 599 F.Supp.2d at 726 (citations omitted).  Consequently, a seaman's burden of proof for a maintenance and cure claim is "slight," and he need only establish that he was injured "while 'subject to the call of duty as a seaman.' "  *Johnson*, 599 F.Supp.2d at 725 (citing *Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 732 (1943); 1 Schoenbaum, *Admiralty and Maritime Law*, § 6-28; Fifth Circuit Pattern Jury Instructions: Civil § 4.11 (2006 ed.)). At the same time, an employer is entitled to investigate a seaman's claim for maintenance and cure, and rely on certain defenses to deny benefits when appropriate.  *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) (en banc).  One such defense is

the *McCorpen* defense, which precludes a seaman's recovery of maintenance and cure when he intentionally conceals a pre-existing medical condition from his employer.  *Brown*, 410 F.3d at 171 (citing *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548-50 (5th Cir. 1968)).

To prevail on a *McCorpen* defense, an employer must prove three elements:

> (1) the seaman intentionally misrepresented or concealed medical facts;
>
> (2) the non-disclosed facts were material to the employer's decision to hire the seaman; and
>
> (3) a connection exists between the withheld information and the injury complained of in the lawsuit.

*Brown*, 410 F.3d at 171 (citing *McCorpen*, 396 F.2d at 548-49).  Bertucci has moved for summary judgment with respect to Plaintiff's claim for maintenance and cure for his lower back injury because, Bertucci argues, it has satisfied its burden to prove all three elements of the *McCorpen* defense.  The Court reviews each element in turn.

## I.    Intentional Concealment

*McCorpen*'s intentional concealment prong is an objective inquiry that "neither necessarily turns on credibility nor requires subjective determination."  *Brown*, 410 F.3d at 175.  Bertucci submits that Plaintiff intentionally concealed a pre-existing condition – Plaintiff's lower back injury.  Bertucci required Plaintiff to undergo a pre-employment medical examination with Dr. Paul B. Lansing ("Dr. Lansing") on March 15, 2012.[12]  At the examination, Plaintiff completed a mandatory occupational history form.[13]  The form first

---

[12] R. Doc. 24-3.

[13] R. Doc. 24-3.

7

inquires "[w]hat work will you be doing? (Job Title/Description)."[14]  In the blank following the question, Plaintiff wrote "Barge Oiler."[15]  The next three questions ask: (1) "Have you done this type of work before?  Yes ___ No ___," (2) "If so, did you have problems?  Yes ___ No ___," (3) "Will you be able to do this job?  Yes ___ No ___ Uncertain ___."[16]  Plaintiff did not check any box for these three questions.[17]

Second, the form contains a section regarding "OCCUPATIONAL HISTORY," which requests Plaintiff's "Previous Employer," "Job Title," and "Date(s)."[18]  Plaintiff did not supply any information for this section of the form.  Third, the form inquires "Have you ever been off work for more than one day due to job-related illness or injury?  If yes, when?"  Plaintiff circled "N" for no.[19]  The form's final relevant question for the purposes of Court's inquiry asks "Have you ever been hospitalized?  If yes, when?"  Again, Plaintiff circled "N" for no.[20]

After Plaintiff completed the occupational history form, Dr. Lansing reviewed the form with Plaintiff and performed a physical examination that included checking Plaintiff's blood pressure, pulse, heart rate, heart, lungs, ears, nose, throat, chest, abdomen, back,

---

[14] The form is in English, but following every question is a Spanish-language translation of the relevant question.  R. Doc. 24-3.

[15] R. Doc. 24-3.

[16] R. Doc. 24-3.

[17] R. Doc. 24-3.

[18] R. Doc. 24-3.

[19] R. Doc. 24-3.

[20] R. Doc. 24-3.

legs, arms, wrist, and shoulders.[21] Dr. Lansing testified at his deposition that if Plaintiff had answered "yes" to the questions regarding prior job-related injuries and hospitalization, he would have asked Plaintiff to explain his answers.[22]  Following the medical examination, Bertucci hired Plaintiff as a barge oiler, a heavy labor position, that same day – March 15, 2012.[23]  Plaintiff sustained the complained of injuries in this case just two weeks after he was hired.

　　　Bertucci has come forward with competent summary judgment evidence, Plaintiff's deposition testimony, establishing that Plaintiff sustained a lower back injury on February 27, 2006,[24] while working for Bogalusa Concrete (the "2006 injury").[25]  Plaintiff testified at his deposition that the 2006 injury occurred when he ascended a cement silo to weld a light bracket, a handrail "brook loose," and he then "free fell about 15 feet."[26]  Plaintiff sought treatment at Bogalusa Medical Center, where he was diagnosed as having a "lower back" injury.[27]  Thereafter, Dr. Paul Doty also treated Plaintiff for his lower back injury.[28]  As a result of the 2006 injury, Plaintiff received epidural steroid injections, underwent

---

[21] R. Doc. 24-2 at p. 4.

[22] R. Doc. 24-2 at p. 6.

[23] R. Doc. 29 at p. 14.

[24] R. Doc. 66 at p. 2.

[25] The parties also stipulate in the uncontested facts section of their proposed pretrial order that Plaintiff "injured his lower back, including a ruptured disc at L5-S1, while working for Bogalusa Concrete prior to his employment with Bertucci."  R. Doc. 29 at p. 15.

[26] R. Doc. 24-4 at p. 4.

[27] R. Doc. 24-4 at p. 5; R. Doc. 29 at p. 15.

[28] R. Doc. 24-4 at p. 5.

physical therapy, and collected worker's compensation for approximately one year.[29] Plaintiff did not work during that time.[30] Plaintiff was still taking Suboxone, a non-narcotic prescription pain medication, for lower back pain when he applied for employment with Bertucci.[31] Bertucci contends that this summary judgment evidence proves that Plaintiff intentionally concealed his 2006 injury.[32]

"In cases involving pre-existing conditions, courts distinguish between non-disclosure and concealment." *Jauch v. Nautical Services, Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (per curiam).   The standard a court must apply to determine if a seaman intentionally concealed a pre-existing condition turns on whether the employer required the seaman to undergo a pre-employment medical examination or interview.   If the employer does not require a pre-employment medical examination or interview, a seaman must disclose his pre-existing condition " 'when in [the seaman's] own  opinion' " his employer " 'would consider it a matter of importance.' " *Jauch*, 470 F.3d at 212 (quoting *McCorpen*, 396 F.2d at 548-49).  By contrast, if the employer does require such a medical examination or interview "as part of its hiring process, a seaman who misrepresents or conceals any material medical facts, disclosure of which is plainly desired, risks forfeiture of his maintenance and cure benefits." *Jauch*, 470 F.3d at 212 (citing *McCorpen*, 396 F.2d at 549).  "Failure to disclose medical information in an interview or questionnaire that is

___

[29] R. Docs. 24-4 at pp. 5-6 and 29 at p. 15.

[30] R. Doc. 24-4 at p. 6.

[31] R. Docs. 24-4 at p. 7 and 29 at p. 15.

[32] The Court also observes, as does Bertucci in its reply memorandum (R. Doc. 62 at p. 1), that Plaintiff's opposition memorandum addresses only the second and third prongs of the *McCorpen* defense.

obviously designed to elicit such information . . . satisfies the 'intentional concealment' requirement." *Brown*, 410 F.3d at 174 (quoting *Vicovich v. Ocean Rover O.N.*, 1997 WL 21205, at *3 (9th Cir. Jan. 14, 1997)).

Bertucci required Plaintiff to undergo a pre-employment medical examination.  At that examination, when specifically asked on a questionnaire whether he had ever missed more than one day of work due to a job-related injury or had ever been hospitalized, Plaintiff answered "no." Yet, at his deposition, Plaintiff admitted that he had suffered a job-related injury in 2006 while in the employ of Bogalusa Concrete, and that such injury required hospitalization and significant treatment and caused him to miss work for approximately one year.[33] Plaintiff also admitted that he collected worker's compensation benefits as a result of the 2006 injury.  Bertucci's occupational history form was clearly designed to elicit the medical information about which Plaintiff testified at his deposition. Plaintiff failed to disclose this highly relevant information.  Whether or not Plaintiff purposefully failed to disclose this information in bad faith is irrelevant because intentional concealment is an objective inquiry.  *Brown*, 410 F.3d at 175.  Consequently, the Court concludes as a matter of law that Plaintiff intentionally concealed the 2006 injury to his lower back.  Bertucci has satisfied the first prong of the *McCorpen* defense with respect to Plaintiff's lower back injury.

## II.    Materiality

As for the second prong of the *McCorpen* defense, the "fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to

---

[33] *See also* R. Doc. 29 at p. 15.

the applicant's physical ability to perform his job duties, renders the information material."
*Brown*, 410 F.3d at 175.  Bertucci contends that its occupational history form is designed
to elicit information that enables Bertucci to determine whether or not an individual "is fit
for the position sought."[34]  According to the sworn affidavit of Bertucci's safety director
Leonard Mistich ("Mistich"), if Bertucci had known of Plaintiff's 2006 injury, the company
"would not have approved [Plaintiff] for the heavy labor position of oiler without further
medical information regarding his prior accident and appropriate clearance to return to
work."[35]  Thus, Bertucci argues, the medical information Plaintiff failed to disclose was
material.

     Plaintiff responds that he can prove that Bertucci "would have hired him even if the
information he omitted from his questionnaire had been supplied" and, as a result, the
*McCorpen* defense does not bar his claim for maintenance and cure.[36]  To support his
argument that Bertucci "would have hired him" despite the fact that he concealed relevant
medical information, Plaintiff first cites Dr. Lansing's deposition testimony in response to
a series of hypothetical questions.  At his deposition, Dr. Lansing was given a description
of Plaintiff's 2006 injury and shown a copy of his 2006 MRI scan.[37]  When asked whether
any of this information would have been material to his decision to clear Plaintiff for work
as a barge oiler, Dr. Lansing answered in the negative.[38]  Dr. Lansing further testified that

---

[34] R. Doc. 24-1 at p. 5.

[35] R. Doc. 24-5 at p. 3.

[36] R. Doc. 36 at p. 5 (citing *Jauch*, 470 F.3d at 212).

[37] R. Doc. 36-7 at pp. 2-5.

[38] R. Doc. 36-7 at p. 6.

if a physical examination is not consistent with MRI findings, he would rely on his physical examination findings when determining whether an individual is fit to perform a specific job.[39] Consequently, Plaintiff argues that "the results of [Plaintiff's] physical exam would have remained the same no matter how many prior medical records were available, and it was those clinical findings that, in the end, convinced [Dr. Lansing] of [P]laintiff's fitness for the job."[40]

Having secured this testimony from Dr. Lansing, Plaintiff next turns his focus to Mistich's deposition testimony.[41] At the deposition, Plaintiff's counsel asked Mistich to explain the meaning of the phrase "further medical information" in his affidavit statement that "Bertucci would not have approved [Plaintiff] for the heavy labor position of oiler without further medical information regarding his prior accident and appropriate clearance to return to work."[42] Mistich indicated that he would require medical records of Plaintiff's 2006 injury and that such records would be forwarded to a doctor for review.[43] Plaintiff concludes that "[g]iven Dr. Lansing's virtual dismissal of previous injuries in favor of contemporaneous physical findings, and given Leonard Mistich's admitted reliance on the doctor's opinions, [Bertucci's] suggestion that Mr. Mistich would have sought *anything* beyond the doctor's advice when assessing [Plaintiff's] physical fitness is suspect, at best."[44]

---

[39] R. Doc. 36-7 at p. 7.

[40] R. Doc. 36 at p. 6.

[41] The parties deposed Mistich on February 7, 2013, *see* R. Doc. 36-8 at p. 1, after he signed his affidavit in support of Bertucci's motion on January 24, 2013. *See* R. Doc. 24-5 at p. 3.

[42] R. Doc. 36-8 at p. 5.

[43] R. Doc. 36-8 at p. 6.

[44] R. Doc. 36 at p. 7 (emphasis in original).

Bertucci replies that Plaintiff's arguments that Dr. Lansing would have cleared Plaintiff for work had he been aware of Plaintiff's 2006 injury "are all hypothetical irrelevancies that should not be considered" because it is beyond the scope of the Fifth Circuit's "rational relationship" analysis for materiality.[45] *See Brown*, 410 F.3d at 175 ("The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material.").  Bertucci underscores that Mistich reiterated at his deposition that the company inquires about prior job-related injuries in order to determine whether an individual can safely perform a specific job.[46]  Mistich, who had the power to veto Plaintiff's hiring, testified that had he known of Plaintiff's 2006 injury and hospitalization, he would have, at the very least, required Plaintiff to submit more information about his pre-existing condition so Plaintiff could undergo further medical testing before he could be hired.[47]  In addition, Mistich testified that, based on his prior experience with Bertucci, Plaintiff would not have been hired had he disclosed his 2006 injury during the pre-employment process.[48]  Finally, Mistich also stated that any employee who misrepresents information in his job application or pre-employment medical examination is subject to termination.[49]  Bertucci submits that Mistich's affidavit and deposition testimony are sufficient to satisfy *McCorpen*'s materiality prong.

---

[45] R. Doc. 62 at p. 5.

[46] R. Doc. 62-1.

[47] R. Doc. 62-1.

[48] R. Doc. 62-1.

[49] R. Doc. 62-1.

14

The facts of this case are analogous to those presented to the Fifth Circuit in *Ramirez v. American Pollution Control Corporation*, 418 Fed. App'x 287 (5th Cir. Mar. 14, 2011). In *Ramirez*, the plaintiff, Orlando Ramirez ("Ramirez"), sought employment as a deckhand with defendant, American Pollution Control Corporation ("AMPOL"). In his application for employment, Ramirez

> stated that he had never had back, head, or neck trouble, never received workers' compensation for injuries, and never had any accidents or serious injuries. These representations were false. Ramirez had suffered back injuries in 1979 and 1986, suffered a neck injury in 2002, suffered back and neck injuries in a car accident in 2004, and had made at least three workers' compensation claims for injuries. On September 26, 2006, AMPOL hired Ramirez. On October 11, 2006, Ramirez slipped and fell while serving on the M/V AMPOL RECOVERY. Ramirez alleges that this fall injured him and caused him serious pain in his neck, shoulder, elbow, and wrist.

*Ramirez*, 418 Fed. App'x at 288. Thus, like Plaintiff in this case, Ramirez sustained his injuries just two weeks after he was hired.

Thereafter, Ramirez sued AMPOL, alleging that it had failed to provide maintenance and cure benefits. *Ramirez*, 418 Fed. App'x at 289. AMPOL moved for summary judgment, relying on the *McCorpen* defense. The U.S. District Court found AMPOL had proven that *McCorpen* barred Ramirez's maintenance and cure claim, and granted summary judgment in AMPOL's favor. *Ramirez*, 418 Fed. App'x at 289.

Ramirez appealed, arguing that a "genuine dispute [exists] over the materiality of his preexisting injuries because testimony . . . demonstrates that AMPOL would have hired him even if he had disclosed his preexisting injuries." *Ramirez*, 418 Fed. App'x at 290 (citing *Jauch*, 470 F.3d at 212). Specifically, Ramirez highlighted that his cousin, Tony Galindo ("Galindo"), was captain of the relevant vessel. According to Ramirez, AMPOL

15

would have hired him, regardless of his previous injuries, due to Galindo's recommendation.   To support his argument, Ramirez cited the testimony of Clayton Humphrey ("Humphrey"), AMPOL's employee in charge of hiring and firing deckhands. When asked "[s]o you cannot sit here in court and say, knowing what you know now, 'I absolutely would not have hired Mr. Ramirez'; right?," Humphrey stated that

> the only way I would have [hired Ramirez is] if Tony [Galindo] would have said, "Let's hire him. I'd really like to have him on there," then we would get further evaluation.  But if you walked into my office and filled out an application and answered the same questions, that you had all those preexisting injuries, I would not hire you unless you've got somebody that is in my employment that can say, "He's a good guy. I'd like to have him working with me."

*Ramirez*, 418 Fed. App'x at 290.  The Fifth Circuit found that the testimony at issue did "not create a genuine dispute of the materiality of Ramirez's preexisting injuries" because

> Humphrey did not state that he would have hired Ramirez based on Galindo's recommendation; rather, he stated that Galindo's recommendation entitled Ramirez to further medical examinations before a decision on employment. Prior to the above-quoted testimony, Humphrey stated that he would have sent Ramirez to another doctor for further examination, but would not have hired him based on his medical history. Humphrey also stated that Ramirez's medical problems would have prevented him from working on the M/V AMPOL RECOVERY at the beginning of the voyage on which Ramirez was injured. Furthermore, Humphrey testified that, if he had learned that Ramirez had misrepresented his preexisting injuries on his job application, Ramirez would have been terminated. **Thus, Ramirez's injuries were material for purposes of the *McCorpen* defense because Ramirez's disclosure of his previous injuries "would have either prevented his employment, or at least delayed it, preventing his having been present . . . at the time of the accident."** *Jauch*, 470 F.3d at 212-13; *see also Brown*, 410 F.3d at 175 (finding materiality where employer "based its hiring decision (at least, in part) upon whether applicants had [preexisting injuries]").

*Ramirez*, 418 Fed. App'x at 290-91 (emphasis added).  Consequently, the Fifth Circuit affirmed the U.S. District Court's summary dismissal of Ramirez's claim for maintenance and cure.  *Ramirez*, 418 Fed. App'x at 291.

As in *Ramirez*, Plaintiff's 2006 injury was material to Bertucci's decision to hire him. Plaintiff sought employment with Bertucci as a barge oiler, a heavy labor position.  Bertucci has come forward with competent summary judgment evidence that, in order to employ Plaintiff in that position, Bertucci needed to verify that Plaintiff was capable of performing his assigned job duties.  The mandatory pre-employment medical examination, with its attendant occupational history form, was designed to elicit information that would enable Bertucci to make this determination.  The medical information Bertucci sought – via its pre-employment questionnaire containing specific medical history questions – was rationally related to Plaintiff's physical ability to perform his job duties.

At a minimum, if Plaintiff had disclosed this relevant medical information, Bertucci would have required further information about Plaintiff's physical fitness before he could be hired for a heavy labor position like that of barge oiler.  Thus, given that Plaintiff was allegedly injured a mere two weeks after his hiring, disclosure of the 2006 injury would have "at least delayed [Plaintiff's hiring], preventing his having been present . . . at the time of the accident."  *Jauch*, 470 F.3d at 212-13.  In addition, Mistich testified that, based on his experience as Bertucci's safety director with hiring responsibilities, Plaintiff would not have been hired, further supporting Bertucci's assertion that Plaintiff's non-disclosure was material.  *Jauch*, 470 F.3d at 212-13; *Ramirez*, 418 Fed. App'x at 291.  Having considered the evidence presented, the Court concludes as a matter of law that Plaintiff's 2006 injury was material.  *Lett v. Omega Protein, Inc.*, 487 Fed. App'x 839, 849 (5th. Cir. Aug. 6, 2012);

*Ramirez*, 418 Fed. App'x at 290-91; *Jauch*, 470 F.3d at 212-13 ("[Plaintiff] concealed numerous instances of back injury and mental health problems, disclosure of which would have either prevented his employment, or at least delayed it, preventing his having been present . . . at the time of the accident."); *Brown*, 410 F.3d at 175. Bertucci has satisfied the second prong of the *McCorpen* defense with respect to Plaintiff's lower back injury.

### III.   Causal Connection

The third *McCorpen* prong requires a defendant to show that there is a causal connection between the withheld information and a plaintiff's complained of injuries. *Brown*, 410 F.3d at 171.  As another section of this court has discussed in great detail, *McCorpen*'s third requirement "does not turn on whether the plaintiff's misrepresentations caused his injuries in the normal sense."  *Johnson*, 599 F.Supp.2d at 728.  "A successful *McCorpen* defendant need not submit any proof that the plaintiff's omission caused the injury.  Rather, the *McCorpen* defense will succeed if the defendant can prove that the old injury and the new injury affected the same body part."  *Johnson*, 599 F.Supp.2d at 728 (citing *Brown*, 410 F.3d at 176).  Bertucci contends that Plaintiff's 2006 injury and his alleged lower back injury complained of in this lawsuit affect the same body party – that is, Plaintiff's lower back.  Bertucci has come forward with evidence that, as a result of his accident while employed with Bogalusa Concrete in 2006, Plaintiff injured his lower back and ruptured a disc at L5-S1.[50]  With respect to Plaintiff's alleged April 2012 lower back injury at issue in this case, an MRI conducted after the alleged accident revealed disc

---

[50] R. Docs. 24-4 at p. 5 and 29 at p. 15 ("[Plaintiff] injured his lower back, including a ruptured disc at L5-S1, while working for Bogalusa Concrete prior to his employment with Bertucci.").

herniations in Plaintiff's lower back at L3-4, L4-5 and L5-S1.[51]   Bertrucci argues this evidence satisfies *McCorpen*'s third prong because Plaintiff's 2006 injury and alleged 2012 injury affect the same body part.

The Court's inquiry with respect to *McCorpen*'s third prong "is simply whether the new injury is related to the old injury, irrespective of their root causes." *Johnson*, 599 F.Supp.2d at 728-29 (collecting cases); *see also Kathryn Rae Towing, Inc. v. Buras*, 2013 WL 85210, at *6 (E.D. La. Jan. 7, 2013) (Vance, J.); *Luce v. C&E Boat Rental, LLC*, 2010 WL 4553509, at *6-7 (E.D. La. Nov. 2, 2010) (Africk, J.).   "[T]here is no requirement that a present injury be identical to a previous injury." *Brown*, 410 F.3d at 176 (quoting *Quiming v. Int'l Pac. Enters., Ltd.*, 773 F.Supp. 230, 236 (D. Haw. 1990)).   Because Plaintiff's alleged 2012 injury is to the same area of Plaintiff's body as his 2006 injury, Bertucci has established the requisite causal connection.   *Brown*, 410 F.3d at 176; *Luce*, 2010 WL 4553509, at *6-7.   Bertucci has satisfied the third prong of the *McCorpen* defense with respect to Plaintiff's lower back injury.

Thus, because the Court has found as a matter of law that Bertucci met its burden to show all required elements of the *McCorpen* defense, *McCorpen* bars Plaintiff's claim for maintenance and cure *vis-à-vis* Plaintiff's lower back injury.

### IV.   The Scope of this Order

The full extent of Plaintiff's injuries – beyond his alleged lower back injury – is not clear from the briefing before the Court regarding Bertucci's motion for summary judgment.   The parties agree that Plaintiff complains of an injury to his lower back as a

---

[51] R. Doc. 24-6.

result of his alleged April 2012 accident aboard the *A/B 8*.   Nevertheless, Plaintiff also indicates in his opposition memorandum that he injured "several areas of his body as a result of his [April 2012] accident," including his chest and neck as well as his lower back.[52]

The parties have engaged in significant discovery since Bertucci filed the instant motion.   In its reply memorandum, Bertucci submits that it recently received a file containing

> an overwhelming amount of medical records chronicling [Plaintiff's] numerous previous medical complaints, injuries, and treatment.  One such record involved another prior injury and hospitalization that [Plaintiff] failed to inform [Bertucci's counsel] about during his deposition and the doctors at Concentra during his pre-employment physical for Bertucci. On March 1, 2001, [Plaintiff] went to the emergency room at St. Tammany Regional Medical Center reporting that he was involved in a Motor Vehicle Accident that morning as a result of a collision with a train. . . . [Plaintiff's] chief complaints were shoulder pain, left side pain, back pain and neck pain. . . . He was referred to physical therapy.[53]

Consequently, Bertucci argues that "none of [Plaintiff's] complaints[,] whether back, neck, nor chest[,] are connected to his alleged accident at Bertucci."[54]   This evidence is not properly before the Court on summary judgment because Bertucci's motion is limited to Plaintiff's "willful concealment of prior injuries to his back."[55]   While Bertucci may have gathered additional evidence tending to show that Plaintiff intentionally concealed other pre-existing conditions or injuries in his March 2012 pre-employment medical

---

[52] R. Doc. 36 at p. 8.

[53] R. Doc. 62 at p. 6.

[54] R. Doc. 62 at p. 6.

[55] R. Doc. 24-1 at p. 4.

examination, Bertucci cannot expand its request for relief by attaching such evidence to a reply memorandum.

Therefore, the Court underscores that this order addresses only Plaintiff's maintenance and cure claim with respect to his lower back injury. Bertucci may urge its *McCorpen* defense regarding Plaintiff's alleged injuries to other areas of his body at the appropriate time at trial.

### Conclusion

Accordingly, for the reasons set forth above,

**IT IS ORDERED** that Bertucci's motion for summary judgment be and hereby is **GRANTED** and that Plaintiff's claim for maintenance and cure with respect to his lower back injury allegedly sustained in April 2012 is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this __15th__ day of March, 2013.

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**